I welcome you here. This is what we call the night shift, since all of our colleagues got to sit in the morning, but it has some advantages if you didn't have too big a lunch. We just have a couple traffic rules I'd like to remind you of. The first one is the traffic light system. When the yellow light comes on, you have two minutes to conclude your argument. When the red light comes on, we ask you to stop as quickly as possible unless you're answering one of the judge's questions. And the second one is that we will have read the briefs and the record excerpts. We may not have gotten into the complete record before oral arguments, so we appreciate those citations when they're appropriate. First case, number 16-60515, Rodriguez-Saragosa v. Sessions. And we'll hear from Mr. O'Connor. May it please the Court, Jose Rodriguez is seeking review of the BIA's June 2016 decision to deny his one statutory motion to reopen of his 2002 removal order, which determined that he had an aggravated felony. In his motion to reopen, he sought equitable tolling of the statutory 90-day period because he only discovered the fundamental change of law, which was Garcia-Carrillo's regarding the deportation departure bar and Armendariz-Moreno, the 2009 Fifth Circuit case on unauthorized use of vehicles of 16B crime of violence. Mr. O'Connor, would you address the outstanding motion to take judicial notice of the reinstatement order? Yes, Your Honor. I believe the motion is inappropriate under Federal Rules of Evidence 201B because it is a dispute of fact that is reasonably in dispute. What is the dispute? Well, the record that the agency used had no evidence of any reinstatement. Instead, the BIA apparently just assumed that if he was back again after deportation that he must have been reinstated. Well, but we do now have the reinstatement order that's attached to the motion. There is a proposed exhibit, and I would submit that judicial notice is disfavored, and it's actually by the statute 242 INA, the agency, I'm sorry, this court is restricted to only the record evidence, not extraditional facts. We've got a number of circuit cases that have allowed documents to be filed like this. I would submit that it's more appropriate for administrative notice. The agency, upon remand, upon equitable, you know, because they did not examine equitable authority in this case, they would have the opportunity to take administrative notice of a fact that was not in the record. Well, it just seemed like a waste of time since they've already said that they would deny review because of the reinstatement order. Yes, and I believe that view is incorrect, but as far as the Respondent opposes, the Petitioner opposes taking judicial notice of an extra record fact. Why doesn't it just fit right like a glove under 201? It's, I mean, where do you see something in 201 that would say you shouldn't take it? Well, I think it would be a dangerous precedent if courts would assume that a notice was, an actual order was reinstated when, in fact, the agency needs to have that in front of them. There's many instances when people receive second removal orders are not reinstated. But we know this one was issued. There is an apparent evidence that the order was reinstated, and I just believe it's, if this Petitioner is going to have a chance to reopen this case based on the change in law, that it ought to be the agency that addresses those factors first, not this court. Okay. 201 is mandatory if a party asks the court, right? So it isn't discretionary with us. If the government's asked a court to take judicial notice of something that's suitable, it's a must, isn't it? Yes, Your Honor, if it's suitable. So your argument has to be either this isn't suitable or that 1105 doesn't allow judicial notice. But do you have any court that said that? The decisions cited in my brief more go towards the restrictive view that courts take on judicial notice. And, in fact, there's a case much like this one where I think it was a legal reentry prosecution. But instead of taking it, I mean, the guy was there in court, but they would not assume that his presence in the courtroom was an established judicial fact that he had been present with, you know, after legal reentry. My concern, because this case, to me, got a little more tangled than I thought it was once the 28J was filed. But you haven't yet responded or maybe chose not to respond. But you must be familiar with our decision from last month, the Mayhaw decision. Yes, Your Honor. And I believe that decision in its second portion seems to undercut whether 1231 would apply here. Do you agree with that? Not the miscarriage of justice portion of the decision. But when Judge Dennis, speaking for the panel, says the language of 1231 would appear to completely deprive courts of jurisdiction to review reinstated removal orders, another statutory precision, 1252, preserves the court's jurisdiction to review questions of law. You haven't relied on that. They filed that case to us. Is that not relevant for some reason? No, that is relevant. When I read Santos-Mejia, I focused on the first part where they only addressed not equitable tolling but just a lack of notice. And that's quite distinguishable because, I mean, Santos-Mejia says broadly that a collateral attack on an underlying order is not acceptable. It's not a miscarriage per se. Right. But you haven't – my point is you haven't pressed the second portion of the decision, which seems to be a change to me. In other words, even if we would judicially notice the reinstatement order, am I wrong to read this decision from last month as saying that doesn't deprive us of jurisdiction to assess a legal argument? No, that's correct, Your Honor. But you haven't argued that. Yes, and I suppose when I saw the Santos-Mejia, it just seemed a case about asylum and not regarding a change in law as in this case. But I agree that the court is not deprived by 231 per se. Okay. I'll have to ask the government what they think about that. I thought the statute is 231 the same as 1231. I'm sorry. I meant to say 1231 and 241. Yes, sorry. I thought the literal terms of 1231 said that if a removal order is reinstated, it can't be reviewed or reopened. And that's a very – the literal words, but the reinstatement order cannot be reviewed. But the underlying order, Congress has a separate statute on motions to reopen, and the underlying order, it's fundamental after Dada and Kukana that there has to be a vehicle for aliens who have been wronged by a change in law to address that. Now, even after a reinstatement order is issued? After a reinstatement order is issued? After a reinstatement is issued. What's your best case for that? The Morales v. Chiarita from the Ninth Circuit where Judge Kaczynski said that it's fine. They can reinstate the order, and the – I mean, reinstatement's purpose is simply to remove the alien. It's not to adjudicate any facts or any underlying problems. And the alien from abroad can attack the underlying order, and he's fine with that, even though the language of the 1231 says it's not subject to reopening. But I think what he reads that as being the reinstatement process. So during the reinstatement process, you cannot file that motion to reopen. Afterwards? I mean, the statute on its face says after it's been reinstated, the prior order of removal is reinstated from its original date and is not subject to being reopened. Original order is reinstated and not subject to being reopened. Under Morales v. Chiarita's view, the alien still has the statute because the statutory section that says an alien has one right to move to reopen can coexist with that. And just like in— Is that the panel decision and then the government said en banc, got it, but didn't win en banc? Correct. That's what happened? Judge Kaczynski's en banc decision, yes. Has any other circuit followed that view? I have not. Most—I assume most of these cases come up on reinstatement reviews, and the idea of attacking the motion to reopen is not considered. But I have not seen any other circuits follow that. What's wrong with just the underlying logic, the way I look at—and this will oversimplify the law, I'm sure, but the sort of discredited—what's it called? The departed— Departure bar? Yeah, departure bar. Sort of is the flip of this coin, which is if you're an alien abroad, you've been sent overseas, and now you realize that your removal had an ill-founded basis, you have to attack it from there. You can't illegally come back, wait until you're caught, and then say there's a flaw. Aren't all these rules, bars, and laws essentially saying that's the problem? You can't do it this way. There is a parallel, but the departure bar, which has been found— I know. —valid in most places is a strictly regulatory. In this case, Congress allowed a motion to reopen for every alien, and I think the way to harmonize the statutes where you cannot reopen it is to permit reopening from abroad, just not during the reinstatement process. But you would still—do you agree with me? You'd still run into a big problem as to the first portion of MEHA because your client would have to show it's a miscarriage, but the language of the decision specifically says it won't be a miscarriage when he's illegally reentered, right? You have to say that that's just incorrect? Don't— Yeah, I would distinguish the first part of MEHA just because the court never had a chance to address equitable tolling. They were focused on a completely different part of a person who didn't get notice of a hearing, and, of course, that is a different animal than this court's lugo rescindus jurisprudence, which really allows aliens who have had multiple years in this country, like Mr. Rodriguez, to have a chance to—at least to have the agency look at his argument. But it says we've held there is no gross miscarriage where the petitioner failed to contest his removability in prior proceedings. Yes, and that's the same because Mr. Rodriguez did contest his removability, and at the time he took a motion, a BIA appeal, on the issue of whether an unauthorized vehicle was a 16B crime of violence, and, of course, the Galavan-Rodriguez case in this circuit foreclosed any further appeal. So he was really different than the case in Santos where he didn't show to court and didn't have a chance to—or didn't contest it. But he doesn't do it promptly, right? The decision he's relying on is a 2009. Yes, Your Honor. Armendariz-Morano was— What case says it's not a—what case—what equitable tolling case stands for the proposition that you didn't discover your law quickly enough that allows you to equitably toll? That's Garcia-Carrillo's from 2012 where it said that—his court said that an alien may file a statutory motion to reopen upon learning of the change in law. Whenever he learns of it? Yes, within 90 days of learning of the change in law. Okay. That's in your brief, that case? Yes, and that's Garcia-Carrillo's 2012. I think the court should focus on the Lugo-Rodriguez case really because this is the case that controls—I mean, this court has heard many motions to reopen cases before that, and then that was a sea change where the court recognized that equitable tolling motion cannot be turned away as the BIA had been doing. And, of course, in this case, the BIA did not have the advantage of Lugo-Rosendez. This motion, the BIA decided in June 2016, and Lugo-Rosendez came out in July. So it would be much better for this court to at least have the agency have a crack at applying the correct factors. Their decision runs over, just does not even recognize the many arguments presented in the motion about how he met an attorney in jail and quickly put together a motion to reopen as best he could within the 90 days to qualify for equitable tolling. And I think the policy reason here is that motions to reopen are an important safeguard, as the Supreme Court found in Dada. And in that case, motions to reopen were not allowed if you took voluntary departure. And the Supreme Court was able to say, well, if you withdraw the voluntary departure, we can harmonize the provisions. In the same way, if the court is going to find that the reinstatement has happened, or if Remand and the BIA finds that, we can still harmonize that by harmonizing one motion to reopen in 240C7 and the reinstatement bar in 1231. Okay, I think we have your argument. Thank you, Your Honor. Okay, you have time for rebuttal. Thank you. All right. Mr. Sandhu. Good morning, Your Honors. May it please the Court. At the outset, the government would argue that this Court lacks jurisdiction over the petition for review pursuant to the recent Mejia v. Sessions decision that came out a couple of weeks ago. The facts of that case are very similar to the facts of this case. The petitioner in that case was deported from the country early 2000 or even earlier than that, came back in illegally, the order was reinstated, filed a motion to reopen, and the question before the Court was, what jurisdiction does the Court have over the executed removal order? The Court found that that motion to reopen was a, quote, collateral challenge to the executed removal order, and, therefore, the Court lacked jurisdiction if the petitioner did not exhaust his administrative remedies. Let me ask you this. How do you square what you just said with the language in Motive v. Lynch where the Supreme Court said, whenever the Board denies an alien statutory motion to reopen a removal case, courts have jurisdiction to review its decision? Correct. Motive was addressing a specific question that had come up in this circuit's jurisprudence with regard to equitable tolling. So Motive was addressing the question of whether there is judicial review of a motion to reopen where the petitioner asserts equitable tolling to cure the untimely motion to reopen. That was the narrow question in Motive. Motive was not addressing jurisdiction over an executed removal order, and so that issue was not present before the Supreme Court. The issue was present precisely before this Court in Mejia v. Sessions, where the Court found that it lacked jurisdiction over the motion to reopen because it was a collateral challenge to the executed removal order and the petitioner failed to establish a gross miscarriage of justice. What bothers me about that is the collateral attack language has its source in the old habeas cases, where before Congress did away with that relief, that was the way those cases were resolved. So I just question whether that has viability now that we don't have habeas. I think the panel's decision is correct. Well, I know, but can you explain how we have that? Sure. I think it's consistent with this circuit's longstanding precedent. It's an application of the gross miscarriage of justice standard to the context of motions to reopen, which are essentially collateral challenges. So Your Honor is correct in the sense that before the jurisdictional amendments in the Immigration Nationality Act over the last couple of decades, review used to be in the district court, habeas jurisdiction used to be available, and in those circumstances when someone was removed and they would come in illegally, they tried to collateral attack their old order, they would file a habeas petition, and the court said the gross miscarriage of justice was the test there. It's also come in the reinstatement context when the petitioner files a petition for review of the reinstatement order, which is not at issue here. This is a petition for review of the denial of reopening. But this court has addressed this issue in those circumstances like the Ramirez-Molina decision, which was judicial review over the reinstatement order where the petitioner sought to collateral attack the underlying order, not the reinstatement order, but the order that had been reinstated, the original order. And in those circumstances, in fact, that's where the gross miscarriage of justice test came from. In terms of the Mejia decision, they cited Ramirez-Molina. So application of that test in Mejia is just a logical application of the court's jurisprudence in these other areas. That is the old jurisprudence pre-MATA, though. Did the government urge that application to motions to reopen the habeas language in Mejia? In other words, is this the government's thought? Obviously, Mejia has issued. Is this the government? Have you studied it, and that is a correct application of habeas law? So I don't believe that the government specifically made that argument in Mejia. Right. But I think it's very consistent with — But it was inconsistent with unpublished Fifth Circuit law and its intention with the Supreme Court. Would you agree with both those statements? No. I don't think it's inconsistent with published — Unpublished. Unpublished precedent. I don't think that unpublished precedent has reached this issue. I don't — Has any other circuit said this? I don't believe any other circuit has reached that precise issue. But I don't think it's at all intentional with Supreme Court case law. It isn't. The trouble is this is a 28-J letter. This isn't your primary argument. And at least as I read Mejia, the remainder of the decision undercuts, moots out your judicial notice, which was your briefed argument to us. Do you want me to elaborate on that, or do you understand that? No, I want to elaborate on that. You'd like me to. Should I explain why I think the rest — No, you don't need to. I understand your point. Let me just say that I don't think — I think the first holding in Mejia is dispositive. Now, but it's never been briefed. It's just been given to us in a 28-J letter. That's correct. I think the court is bound by the Mejia decision. Okay. But you didn't brief it at all. We did not brief it. And you didn't argue it to that panel. Correct. It's a jurisdictional issue. Okay. The court needs to address its jurisdiction as — I don't think it was argued in Mejia either. Right. Secondly, I understand Your Honor's point with regard to the analysis in the second part of Mejia. That's not relevant to the point that we're making in our second argument. Our second argument is a futility argument. Our second argument — It's not a jurisdictional argument? It's not based on this Court's jurisdiction. It's based on the board's jurisdiction. Our second argument is as follows. If the Court remands the case either for the purpose of, you know, the agency putting the reinstatement order in the record or for equitable tolling, which we don't think it should, it would be futile. That's our argument. Because as this Court, this panel has read, the reopening statute — I'm sorry, the reinstatement statute says that, in part, the prior order of removal is reinstated from its original date and is not subject to being reopened. So the BIA can't reopen it. Yes. That's what the government is doing. It's not a jurisdictional argument that we can't review it. Well, that's correct, although Mejia indicates, I think correctly, that this Court lacks jurisdiction as well except for legal challenges under 12. But that's what he's making here. Correct. And we're not arguing that this Court lacks jurisdiction under the reinstatement statute. We're making two other distinct arguments. Number one, under Mejia, that this is a collateral challenge apart from reinstatement — But that wasn't in your brief. Correct. I thought your brief was directly, explicitly 1231 says, reinstatement bar, you, Fifth Circuit, don't have jurisdiction because we have judicial notice of the reinstatement, end of story. You're saying that wasn't what you argued? That's not precisely what we're arguing. That's not what — You're arguing futility. We're arguing futility. We — and we cite the Seventh Circuit's decision on this, which — in Cordova, which found that the plain language of the reinstatement statute bars reopening. By the BIA. By the BIA. Reopening — we read reopening to be — And when the rest of the statute says, and no review, that isn't a jurisdiction stripping? It is. It is under Mejia a jurisdiction stripping. That's the fact. But you have to also then read it consistent with AUSC 1252A2D that restores review over questions of law and constitution. Okay. So I think you're embracing Mejia in all aspects. If Your Honor agrees with the first. You are embracing. I'm not saying I agree with it. Oh. Right? You're — Judge Dennis writes that as to questions of law, which this individual is bringing, as opposed to a changed country circumstance, the Fifth Circuit, our court, would have jurisdiction, but it would be futile because on remand the board couldn't. That's your view of 1231 applied here. It is, although I don't think the court gets — I don't think the court can get to that issue because of its lax jurisdiction as an executed removal order. He does not raise — so, for example, in Mejia, the Petitioner raised a claim separate and apart from the challenge to the executed removal order. And that claim was a claim based on changed country conditions to support a claim for asylum and withholding. That's not a challenge to the old. That's a — Right. So here the Petitioner is raising solely a challenge to the executed removal order claiming that the law, the new circuit decision that was issued years later, should apply now backwards to unravel the original order. That's a collateral challenge. And that's to an executed removal order because the Petitioner was removed, came back, filed a motion, reopened, making that argument. That claim now is barred from review by this Court unless the — Under the miscarriage logic. Unless gross miscarriage of justice. And there's three reasons why there's not a gross miscarriage of justice. Number one, the Petitioner failed to seek judicial review over the agency's decision in 2002. But he'd have to have then predicted where the law would go 10 years later. No. I think he could have sought, filed a petition for review, and it would have been denied, but he could have either sought en banc review or filed a cert petition. As it ended up happening, that's what eventually happened. So he could have raised that issue and preserved his legal argument before the circuit. Number two, there's a string of case law that says that it's not a gross miscarriage of justice if you're challenging an order which was lawful under the law that existed at that time. So in 2002, when the board — when the immigration judge on the board denied his claim, at that time, the agency was simply applying what was the law in effect at that point. And several circuits have found that that's not a gross miscarriage of justice, and this Court has — Even if later the law changes. That's correct. Well, I'd love the best site on that. I can understand that. Well, it's not because Mejia came down, you know, after briefing. Yeah. It's not in our briefs, but I'll give you — Yeah. Gonzales, Cantu, 866 F. 3rd, 302 at page 306. Okay. And number three, it's not a gross miscarriage of justice because what's involved here is not the question of removability. So the petitioner in his 2000 proceeding — in 2000, I think it was 1999 immigration judge decision, 2002 board decision — was not contesting removability. The petitioner was clearly removable for entering the country without inspection. The conviction goes to discretionary relief. So the immigration judge found petitioner ineligible for cancellation of removal, which is a form of discretionary relief, because the judge determined that the crime was an aggravated felony. So what was at issue in those proceedings was eligibility for cancellation of removal, which is a wholly discretionary form of relief and for which there is no constitutionally protected liberty or property interest. And I would refer the Court to a similar finding in Mejia. And I am embracing Mejia in all respects, I guess, because Mejia says at the end of its decision or towards the end of its decision that the motion to reopen — Go ahead, now. Thank you. All right, I'm sorry. Page 426. Mejia's contention that the BIA violated his due process rights is unavailing. However, as this Court has held, that an alien has no liberty interest in a motion to reopen and therefore cannot establish a due process violation in the context of reopening proceedings. That's well established. That's well established. And so is, Your Honor, the fact that for forms of discretionary immigration relief, like cancellation of removal and 212C relief, there's no constitutionally protected liberty or property interest. Therefore, there can be no gross miscarriage of justice. I know you're well versed in all of the technicalities raised by Mejia here, but what about where we started out with Judge Davis' observation that if we take judicial notice of the reinstatement order, that's the end of it? All of this follows even if we take judicial notice of the reinstatement order? If the Court takes judicial notice of the reinstatement order, we would argue that — you know, we still argue that the Court should dismiss. But if the Court didn't want to reach the jurisdictional issue — I mean, it should. It's a jurisdictional issue. But it could deny the petition for review on the basis that 1231A5 precludes reopening and therefore it would be futile to remand this case back to the agency, if that's what Your Honor is asking. Can we pre-admit the jurisdictional issue and go to that? I think the Supreme Court has cautioned against hypothetical jurisdiction. So if the Court deems this — Why would we have to then remand it? And then the BIA would say we can't reopen it. Well, that's a waste of time. That's what the government is arguing that is futile, that the Court should go ahead as the Seventh Circuit has done and, in fact, as Mejia has done. Because in Mejia — I keep using Mejia, but in Mejia the Court said it rejected a similar argument that the BIA didn't consider the reinstatement statute. In fact, in that case, here at least the agency said something about it. In that case, the agency said — didn't rely on it at all. And on page 425 in Mejia, the Court said that that argument is irrelevant because, quote, 1231A5's limitations are jurisdictional. Just so I can be clear, you're saying the Seventh Circuit articulated this non-jurisdictional futility point, that's the authority? So what I read from you is the Fifth Circuit precedent in Mejia. I know Mejia, but Mejia is very hard for me to grapple with, with the insufficiency of analysis. I thought you said that what I'll call the futility gloss now was articulated by the Seventh Circuit. I believe so in the Cordova decision that's discussed in our briefs. That's correct. Do you find any inconsistency in Mejia in the Gonzales-Cantu v. Sessions case where we said that a showing of gross miscarriage of justice is only required in habeas cases that collaterally attack removal orders and reinstatement proceedings? I'm sorry, that was in which case? It's Gonzales-Cantu v. Sessions. I think I don't see any inconsistency because the panel in that case is correct. I think a subsequent panel in Mejia applied it in a different context. That's not inconsistent. I think at that point the case law was clear that it applied in those two contexts. That's what the panel is noting in that case. And then just recently in Mejia they applied it to the context of a motion to reopen, which is a collateral attack. It's an executed removal order. There's no doubt about it. The petitioner had been removed, came back, filed a motion to reopen, saw a review of the original order. So that is a collateral challenge. Your Honors, if I may, if the Court were to get to the merits, we would disagree that a remand is appropriate because of the equitable polling issue. Let me go. I mean, we have a lot of discussion here about Mejia, but it can't be. You sent it to us on February 26th. I do not believe that opposing counsel has had an opportunity to comment on it at all. Right? I think we sent it in within one week. I understand that, within one week. And I don't know. It just strikes me as odd that the whole case should turn on a decision that just came out that's not squarely on point, I think. And that has nothing to do with anything that's briefed. Your Honors, we would argue it is squarely on point and that we would have no objection to having supplemental briefing if that's what the Court would want on this case. We would dispute the petitioner's argument that as to futility that some review remains available for the Board to reopen a reinstated order. Morales' Quixote, which is his main argument, is not at all applicable. That decision, if you read that decision, it's an en banc decision in the Ninth Circuit, which rigorously enforces the reinstatement statute. And actually, the motion to reopen was never in play in Morales' Quixote. Morales' Quixote involved review of a reinstatement underlying the executed order, but not in the context of a motion to reopen. And so that case is not applicable. And in fact, if you read Morales' Quixote, what it says is that the petitioner should wait outside the country for the period of time and file a motion to reopen from outside the United States rather than illegally reentering. So Morales' Quixote is all about that the aliens should pursue lawful remedies from outside the United States. My time is running out, but I did want to say that the government does not agree, even if the Court gets to the merits. The Armendariz decision was not the focus of the petitioner's motion to reopen before the Board. It was based on Gonzalo's Longario, which is a decision that's been overruled by an en banc circuit. If you read that – the motion and the brief carefully before the Board, Armendariz is hardly mentioned. I think it's mentioned once in the case, and it's not discussed. We're pretty liberal about saying that things have been exhausted, if that's what you're getting at. Yes, I am getting at that, Your Honor. And if there are no other questions, then we would ask the Court to dismiss the petition for review and, in the alternative, to deny the petition for review. Okay, thank you. Okay, Mr. O'Connor. Your Honors, to address the taking judicial notice, I just want to point – Well, how about if you go to the Mejia decision since nine-tenths of the last argument was based on Mejia? Okay. Have you had a chance to read it? I have, Your Honor. It's a disturbing – for the petitioner development to say that every form of challenge to an underlying removal order is a collateral attack in the habeas context. It seems – I don't think that's the proper way to read Santos Mejia. I think it's limited to that situation where a person has not exhausted the – not contested the underlying proceedings and has not shown a gross miscarriage of justice. Would it be of any value to you to have an opportunity to brief it further? Yes, it would, Your Honor, absolutely. Okay. So if – since that does turn on – that's a reinstatement case, I just want to remind the Court that in our briefing we discussed many cases where they refused to take judicial notice given the danger. And even the government itself in an Eighth Circuit case has argued – it's called Perez-Garcia v. Lynch. It's 14-2842. And it was a reinstatement case also where in that case the petitioner was trying to offer evidence that he had been in Mexico and had receipts to show. And the government argued vociferously that they could not take judicial notice. But receipts are very different than an official agency opinion. Yes, Your Honor, but the loan document that we have doesn't show the reinstatement process, which is more elaborate than what they're giving. What about his very – his literal reading of 2231, which is even if May is right that we do have jurisdiction, as you've been arguing, the board on remand would not be able to reopen, which isn't a jurisdictional bar. They can't reopen. Well, at least they would have the chance to consider it. Now, yes, this Court considered the constitutional legal claim that we're making that under Santos Mejia they could review the legal question of – We could review. We remand. But then they can't reopen. Well, that would be a question maybe they take – maybe that's – at least they get a crack at it. They're reading on this case, which is unpublished, of the reinstatement bar maybe something that could be briefed and the agency might change their mind. I think that's the point of this judicial review of agency action is to give them a chance to apply it in the first instance. And as far as the government's argument that cancellation of removal is discretionary and it's – we have the Moncrief decision, which says it's something that shouldn't be bright-lined into saying it's not reviewable when – that it allows the judge to make discretionary decisions underneath. So even if the liberal view that, yes, we can take jurisdiction of it, it still gives the government a chance to deny an unmeritorious claim because the underlying judge can look at the positives and negatives in any discretionary matter. That is discretionary. What about the argument you couldn't have a miscarriage? You should have anticipated the change in law, at least preserved it for the future. And that would be putting a very high burden on often very poor litigants to take very complex issues to Article III judges. I think the agency should be addressing those if they have possibility, instead of contracting their jurisdiction, at least trying to entertain it. The purpose of 240C7 is an investing statute. It invests aliens the right to reopen. So the BIA seems to be skirting their duty to at least entertain the motion and consider it, and then if they find no merit to discard it. And I would just like to emphasize one more time that Lugo Resendez is the framework we have now. So this, without that possible fact of reinstatement, this is a straight Lugo Resendez case which deserves a remand to allow the BIA to assess whether he was diligent and the other factors for equitable tolling. And I believe that's what this court should do. All right, sir. Thank you. Thank you very much. We need the arguments. We would like supplemental briefing. Each of you may file a simultaneous letter brief within one week of today on what consequences MHIA has for this case. Thank you, Your Honor. Thank you.